May it please the court, good morning. My name is Myrna Alvarez and I represent the petitioner Norma Paiz Cruz and I would like to reserve two minutes of my time today for rebuttal. This case is about denial of fundamental fairness in an immigration proceeding. This case is about a judge who did not follow the law and was biased. In the proceedings below, a notorious judge did not allow the testimony of an applicant for cancellation of removal to testify regarding her heart condition. The petitioner before the IJ attempted to testify how her heart condition and being removed from Guatemala would impact the hardship to her children, the qualifying relatives who are United States citizens. On page 74, the judge allows the government to cross-examine the petitioner without allowing her first to provide her case-in-chief. There are three cases that the BIA has decided. She's on the witness stand and her attorney is deprived of the opportunity to take her on direct exam and IJ Ho has the government attorney take her on cross-examination. Yes, Your Honor. She directs the government attorney to conduct a cross-examination prior to allowing the petitioner's attorney to do a direct examination. In fact, on page 74, in the record, it reads, Judge to Ms. Fontova, Ms. Fontova, does the government have any issues with respect to the 10 years continuous residence? Yes, Your Honor. All right then, I'm going to ask the government to cross-examine on that issue first. That's the way it begins. And I believe that the attorney did her best to object by saying we do have some issues concerning exceptional and extremely unusual hardship and the judge simply disregards that. The line of cases that the BIA has decided with regard to cancellation of removal are Nader of Andazola, Nader of Montreal, and Nader of Rosinas. And these are the only three cases that the BIA has rendered with regard to cancellation of removal. Those cases, specifically Nader of Montreal, offers guidance to immigration judges in determining what types of evidence is relevant in these types of proceedings. And very clearly, Nader of Montreal states that the hardship to the applicant, not necessarily to the qualifying relatives, is relevant insofar as it relates to the hardship of the children. In these proceedings, before this judge, on page 83 of the record, the immigration judge misstates the law. The attorney for the petitioner was about to explain that there was evidence of exceptional and extremely unusual hardship in the record, and she's cut off by the judge. And it reads, in response to a question if there's anything about exceptional and extremely unusual hardship, the attorney responds yes. In the exhibits that we included in February 2005, we included some medical reports which show that she disabled her arm. She's cut off. The immigration judge then says, I understand that she's disabled, but the question is exceptional and extremely unusual hardship to U.S. citizen children. She's got it wrong. It's very clear here that she's got the law wrong. She should have allowed her to state her point, and furthermore, she should have allowed the petitioner to testify regarding her disability. And further along, we find out that she also had open-heart surgery, which the immigration judge, again, does not allow her to expound on. Specifically, it's on page 86. The question is, in the past, did you also have, you ever had any type of surgery besides the surgery on your arm? This is what the attorney asked the petitioner. And she responds, yes, I had heart surgery January 22, 2003. The immigration judge jumps in again, interrupts, and says, counsel, I reviewed all those evidence. Anything new you want to add that is not already in the file? Let me ask you this. Is her husband still in the custody of the immigration service? You mean today? Yeah. Well, I don't think that that's really the issue. I don't, you know, I'm asking you a question. Is he? I don't know that. I don't know the answer to that, Your Honor. You don't know where the husband is? I don't know where the husband is at this point. But turning to the way this particular judge addressed that issue, she wrote it off as not being relevant. When the attorney tried to present that evidence that the husband was in detention and that she was going to be going back to Guatemala on her own, the judge disregarded it. See, the facts that I have before me, she's a native and citizen of Guatemala. She's married, has two children who were born in this country. And at the time the IJ made the decision, she was 33 years old. Her children were nine and five. And neither had been to Guatemala. They don't speak much Spanish. Her husband has been detained by the Department of Homeland Security since 2004. And when she got here, she was 21 years old. She went to work for Curran Ridge Growers in a carrot warehouse. She suffered injury, needed surgery to her right shoulder, took disability leave, had major open-heart surgery. She had problems lifting and doing things that required repetitive action. And she supports the family now by working odd jobs, cleaning houses, providing rides to other people. She's never been arrested. And so that's her background. And her children, I believe, are doing well in school. And now we come to the hearing where Anna Ho, the IJ, starts in on her and totally takes over the hearing and decided early on that she hadn't met the 10-year continuous residence requirement, though she testified when she arrived here. And I believe she had affidavits from others and then went on. And as a kicker, stated that she failed to establish exceptional and extremely unusual hardship vis-à-vis the children. Right? Yes, General. Okay. The one other issue that I think is very important. See, you've got to come right to the point. You don't have much time. Right. You know. Yes. The issue here is that she did not allow her to testify regarding hardship. And that is akin to violating a strike. Sorry. That's very similar to the case in Colmenar where a Filipino dentist was applying for asylum and the judge did not allow him to testify regarding persecution. And this court reversed based on that. Yes. Okay. You probably want to have a minute for rebuttal. Thank you, Your Honor. Okay. I will hear from the government. May I please the Court? My name is Nicole Modone, attorney for the Respondent of the United States. As an initial matter, just in response to the Petitioner's argument, I'd like to mention that in their opening brief to the Court, they never argued that the IJ incorrectly applied the law in the case. So in failing to raise that, they waived that argument. Counsel, the issue here is due process in this hearing. And I'm speaking only for myself with my concerns. But I'd like you to explain, in your view, why there wasn't a due process violation with this constellation of problems that occurred at this particular hearing. The IJ did not make an adverse credibility finding and yet refused to find continuous presence that had been testified to by the Petitioner. The main issue that was sought to be brought out was the Petitioner's own health, and yet the IJ did not allow her to testify fully and ignored her testimony. Cross-examination before direct examination, that's one of the more bizarre things I've ever seen. So those are just a few of the problems that I see in it. And by no means is it true that just because there's a generally disliked or not well-respected IJ, that doesn't mean that every hearing from that IJ violates due process. But that's certainly not the case. But in this instance, there just seemed to be a whole constellation of very problematic actions. Yes. I was just trying to find out whether or not the continuous presence had ever been challenged. I don't... Are you trying to find out what? Whether or not continuous presence was an issue. I believe that the IJ... Well, the IJ held that Petitioner did not meet the right requirement at Excerpt 44, but she had testified that she entered well over 10 years before. There is substantial evidence in the record actually to challenge that finding continuous presence. If you look at the asylum application, it indicates that the Petitioner was not living in the United States during the time period that she later states in her cancellation of removal. Well, who prepared that asylum application? It was signed by the Petitioner. I didn't ask you that, did I? Well, ultimately she did sign it. Well, a notarial prepared that. Do you know how this system works here? I do, Your Honor. You know, it's a very bad, corrupt system. I recognize that. And the government knows that. I recognize that. And the government is trying to do something about it. Yes. And Osuna, you know who he is? Well, he was the head of the BIA, the presiding judge. And now he is with the Justice Department. And his job is to try to straighten out what's going on with the BIA and with the system we have for hearing these matters. So the Justice Department knows this. Yes. And Anna Ho, I mean, she's got a series of cases in our court where she's been taken to task for the way she handles these cases. I recognize that. I know the history, Your Honor, with her. However, I think in this case due process simply is not. Counsel, let me get you back to the issue about continuous presence. Because the reason that you gave is not the reason that the I.J. gave. She said that there are no documents to prove residence. That was her reason, not because there was anything in the asylum application. And she said because you didn't bring live witnesses, you brought affidavits. She does discuss, I believe, in testimony that her asylum application indicated that she arrived in 1991. I'm talking about the I.J.'s reason for disbelieving that is on page 44. Well, substantial evidence nonetheless supports her point. This is not a substantial evidence case. This is a due process case. So would you also talk to me about the other, some of the other serious issues that I mentioned to you about cross-examination first, cutting off her evidence on the most relevant point? Yes. Yes, Your Honor. As I was saying, I understand Judge Ho has a history of cases that have, decisions that have not been well regarded. And certainly she has on occasion lost her temper and not been an ideal judge. However, in this case, I don't believe that the comments or that her direction of testimony was, rose the level of a due process violation. She did allow the prosecutor to go first because she wanted to establish the continuous presence element as a preliminary finding. She then did allow the prosecutor to continue in bringing forth testimony. However, ultimately the evidence, the evidence regarding the petitioner's disability and heart attack, what she was essentially, what the judge was essentially saying was that the, that she didn't want to hear redundant testimony. That there was evidence in the record regarding the heart attack and there was evidence in the record regarding the disability. And she essentially said that the, she continually tried to redirect the petitioner's counsel to make a connection between the disability and the heart attack and her inability to work and go on and on. Well, if that's what she had actually said or done, your point would be well taken. But it seemed to me that she was just cutting everything off. The nexus. If you look at the record, however, if you look at the record at page, for example, at page 83 in the record, around this point, the petitioner's counsel is saying, the judge is essentially asking her, why are you wanting to present evidence regarding disability and heart attack? The petitioner's counsel says, I believe the disability will affect her ability to get a job. And the judge then says, well, you can go into that, that's okay. That's the only issue you should touch upon as there are no other issues with respect to the children. And at that point she was asking about the children having any disabilities or hardships with regard to learning or anything in that regard. She continues to redirect again at another point. At the end of testimony, again, the petitioner's counsel begins to bring in evidence regarding heart surgery. And the judge says, counsel, I've reviewed the evidence. I recognize that petitioner had heart surgery. Is there anything else? She again is trying to redirect to make a connection between her inability, between her disability and her heart condition and her inability to work in Guatemala. The record reflects that the petitioner was working at the time in California, doing odd jobs and house cleaning, that her disability benefits had ended, that she had previously worked in Guatemala in a perfume store is what she testified. So it's reasonable that the judge was trying to make some connection between this heart condition and this disability. And even if the case, the court were to find that the judge's behavior was improper or that it was an error, ultimately if this case were remanded to the BIA, the record before them wouldn't show anything any different. There's no evidence. Wait a minute. Wait a minute. Wait a minute. Wait a minute. If there's a due process violation and there's a remand, there's a new hearing at which due process is given. Isn't that correct? Correct. So how do we know what would come forward since this person's testimony was cut off? There's never been an argument made that this disability or heart condition in any way has affected her ability to work in California as she works today. But that's exactly the problem with cutting off testimony, isn't it? Because if you don't hear the evidence, how do you know what the evidence will show? But there has never even been a connection made or an argument even raised that this woman is in any way limited from the work that she's doing today. And as a matter of fact, the work that she had in Guatemala was less intensive than the work that she's doing today in the United States. She was working at a perfume store in Reed's Tale. She was a young woman then. She didn't have any health problems that we know of. Yes. And I think what she was trying to say was, here I've got these two children and I believe my recollection is they're in school, they're doing well. Their Spanish is limited and their English is good. And if I have to go back to Guatemala, my chances of getting any type of work where I can care for these kids are slim. They're going to suffer over that. As far as I can tell from the record, the father is in custody of Homeland Security. And that was the point she was trying to make, that these children are going to suffer unusual hardship. Right. Extreme hardship. That was the whole point of it. That's her point, Your Honor, but this is an extreme remedy. It's an extreme remedy for an extreme condition. And here we don't have an argument that this woman, who is presently working in California, and now she's essentially arguing that she was precluded from introducing evidence regarding a disability and heart attack, which she has not even made an argument in any way, is going to preclude her from working in either the same type of job that she has now or in a job that probably involved a lot less strenuous work in retail as she was working in Guatemala in the past. You know, you're just speculating now. Anyway, you've got to remember we've got two children born in the United States. I recognize that. And that's their birthright. They're American citizens. And I think we need to think about that, and we need to think about what we're doing to these children. And she's not apparently a few. You know, there's a lot of things these kids suffer, and we can even take notice of them. They're living with their parents and their mother, and they have all this uncertainty about what's going to happen to their lives and their school, and a lot of them end up suffering all kinds of emotional problems over it. But there was no really full, fair hearing here. I don't know why you just don't recognize that. Well, Your Honor. No, I mean, you're the Justice Department. Liberty and justice for all, right? Well, certainly. The issue is, though, Your Honor, that there has to be two showings in order for there to be a cross-violation. First of all, we have to show that her proceeding was rendered fundamentally unfair. Well, I think that's obvious to anyone who reads this record. Well, I disagree, Your Honor. Well, that's all right. That's free country. You can disagree. You're over your time now. Thank you. And I think we've heard enough, and I don't know if you want any more argument. That's it. Counsel has some time left. Yeah. You want to talk? No. All right. Thank you. The government tries to argue that there is no way possible that this applicant could have possibly won on her case, and that's not really the point here. The point is that she was not allowed to testify with regard to her heart condition that would, in effect, impact the hardship to the children. That's a very, very basic due process violation. Here we have a situation where the judge was so biased and so ready to make a decision that she didn't allow any further testimony from the applicant with regard to this case, and unfortunately this judge has a history with this court, and Smolniakova is one of the cases, Solotukhin, Rivera, Singh, Karamasami. Those are all cases that involve this judge where she's repeatedly made very grave mistakes in the way she's conducted proceedings. We know all this. This is the same thing, Your Honor. This case is exactly the same, and that's all I have to say. Thank you very much. Okay. Thanks. This matter is submitted. And come to the next matter.
judges: Pregerson, Ripple, Graber